IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Frederick W. Keiser, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| v. | ) | **GRANTING DEFENDANTS'** |
| | ) | **MOTIONS FOR DISMISSAL** |
| Christopher Johnson; Jasmine H. | ) | |
| Dzhanszyan; Law Firm of Criminal | ) | |
| Defense Associates; and Drew H. Wrigley, | ) | Civil Case No. 3:06-cv-81 |
| U.S. Attorney, | ) | |
| | ) | |
| Defendants. | ) | |

Presently before this Court is Defendant's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to Strike the Plaintiff's Complaint under Rule 12(f) (doc. #7). Plaintiff's Complaint includes (1) a RICO action, (2) a fraud in the inducement claim, (3) a fraud in the execution claim, and (4) a request for attorney discipline. The United States has similarly filed a Motion to Dismiss or, in the alternative, to Strike (doc. #15). Plaintiff has filed a response to both Johnson's motion (doc. #10) as well as the motion of the United States (doc. # 18).

## SUMMARY OF DECISION

Plaintiff's assertion that Defendants Johnson and Dzhanszyan lied about their willingness to proceed to trial is not sufficient to avoid dismissal, because there is a poverty of facts, and Plaintiff's allegations are merely conclusory statements. Likewise, Plaintiff has failed to produce any evidence to support his contention that Defendant United States Attorney Drew Wrigley was "a willing participant in fraud." Plaintiff's RICO action, fraud in the inducement claim, and fraud

in the execution claim are therefore properly dismissed. Further, because there is no recognized cause of action for attorney discipline, this claim is also properly dismissed. The Motion to Strike is denied as moot.

## FACTUAL BACKGROUND

On June 8, 2005, Plaintiff Keiser was charged in a 22-count criminal indictment. The indictment alleged wire fraud, money laundering, aiding and abetting, and included a forfeiture allegation. Defendant is alleged to have committed these crimes while engaged in a "prime bank" investment organization, which operated similar to a pyramid or Ponzi scheme. This case, criminal number 3:05-cr-80, was tried to a jury between March 5, 2007 and March 16, 2007. The Jury convicted Keiser on all counts.

Keiser was originally represented by attorney Tim Purdon. Some time thereafter, Keiser obtained the services of Defendant Criminal Defense Associates (CDA). CDA required a retainer of $75,000. Plaintiff states that he retained the services of CDA specifically because a CDA representative told him "we don't plead our cases, we go to trial." Alan Baum originally appeared on behalf of CDA for Mr. Keiser. Christopher Johnson, a senior trial attorney for CDA, and his paralegal Jasmine H. Dzhanszyan, served as Keiser's defense counsel. During the course of the representation, Plaintiff sent Johnson an array of pretrial motions, that Keiser had himself prepared, with instructions that Johnson should file them for the purpose preserving the issues for appeal. Specifically, these motions were (1) to dismiss for selective prosecution or, in the alternative, to convene a federal grand jury; (2) to disclose grand jury transcripts; (3) to dismiss conspiracy counts as unconstitutional; (4) to dismiss the Indictment for Rule 6 violations or, in the alternative, to

inspect a list of names of qualified grand jurors who voted to indict; and (5) for a Bill of Particulars. Johnson apparently declined, and filed no motions before the September 6, 2006 pretrial motions deadline. Johnson states that did not file Keiser's motions because he did not believe them to have support in law. Keiser eventually filed these motions on his own accord (see <u>United States v. Keiser</u>, 3:05-cr-80, docs . # 56, 58 60, 62 and 74). The Court denied each of these motions (<u>Id.</u> at doc. #78)

CDA arranged for Keiser and his associate, Brian Scott[1], to fly to Los Angeles to meet with Johnson on August 28th and 29th of 2006. At this meeting, Johnson set forth the evidence that he believed the government was likely to present at trial and asked Keiser to review it. Keiser states that Johnson offered his professional opinion about the likely outcome of the case and as to what evidence the prosecution would likely focus upon. Johnson further explained that he did not believe that there were any defenses likely to succeed on the merits. Plaintiff's acquaintance, Scott, asked Johnson if he would defend Keiser if he decided to go to trial. Johnson indicated that he would vigorously defend Keiser and would fight the case to the best of his ability.

The parties also discussed the possibility of a plea. Johnson described the likely reduction in the event of a plea, and informed Keiser that he would likely have to cooperate with the government to receive such a reduction. He further explained that he could not make no guarantees to Keiser. Keiser stated to Johnson that he needed to consult with his wife before making any decision. Ultimately, Mr. Keiser decided to sue CDA and the other presently named Defendants. Kesier's suit resulted in DCA moving to withdraw on the basis that the attorney-client relationship

---

[1] Scott is a self-styled "advisor" who "assists" person who find themselves in predicaments like Keiser's. There is no record that Scott is law trained or possesses any particular skill or experience that would qualify him to provided such advice. He is not on any roster of licensed attorneys of which the Court is aware.

had been irredeemably damaged. Keiser declined representation by the public defender and eventually decided to proceed *pro se*.

## ANALYSIS

### I.  12(b)(6) MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) may be properly granted when Plaintiff fails to state a claim on which relief can be granted. Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999). When Plaintiff cannot prove any set of facts that would validate his theory of the case, a court may properly decide that no relief could be granted. In re K-Tel Int'l, Inc. Sec. Ltg., 300 F.3d 881, 888-89 (8th Cir. 2001). The moving parties, Johnson, Dzhanszyan, and the United States, bear the burden of proving such "beyond doubt." Conley v. Gibson, 335 U.S. 41, 45-46 (1957). The Court must read the complaint liberally, construing all factual assertions as true. Briehl v. GMC, 172 F.3d 623, 627 (8th Cir. 1999). The pleadings, however, must contain facts and must not be conclusory. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citing Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam)). The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of form of factual allegations." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002); see also Wescott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)(court need not "blindly accept the legal conclusions drawn by the pleader from the facts."). The Court's source for these facts should be the complaint itself. Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 648 (8th Cir. 2001).

### A.  RICO Action

18 U.S.C. § 1962(c) states that it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Section 1964(c) permits a private party, who has been injured in his private property through a RICO violation, to sue for damages.  Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999).  To successfully establish a RICO claim, a Plaintiff must show (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  Sedima, S.P.R.C. v. Imex Company, Inc., 473 U.S. 479, 496 (1985).

#### 1.  "Conduct" Requirement

As to the first element, Defendants Johnson and Dzhanszyan argue that their actions did not constitute "conduct" because the Eighth Circuit limits recovery only against those who "participate in the operation or management of the [racketeering] enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).  Reves further states that this "operation or management test" requires participation in the affairs of the allegedly corrupt enterprise, not merely the defendant's own affairs.  Id. at 184-85.  An enterprise is not "operated" solely by upper management, but also by lower rung participants who operate under the direction of such management.  Handeen v. Lemaire, 112 F.3d 1339, 1347-48 (8th Cir. 1996).

Johnson and Dzhanszyan cite several cases for the proposition that an attorney does not conduct an enterprise's affairs through the ordinary course of providing legal services.  Handeen, 112 F.3d at 1348; Azirell v. Cohen Law Office, 21 F.3d 512, 521 (2d Cir.1994); Baumer v. Pachl,

5

8 F.3d 1341, 1344 (9th Cir. 1993); <u>Nolte v. Pearson</u>, 994 F.2d 1311, 1317 (8th Cir. 1993).  They further quote the Eighth Circuit in <u>Handeen</u> as stating "...we find it difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney)." 112 F.3d at 1349. These cases, however, dealt with situations where the attorney faced a RICO action for legal services rendered to an entity engaged in racketeering activity, rather than when a law firm itself is alleged to be the racketeer.  Indeed, as the <u>Handeen</u> court makes clear, attorneys enjoy no particular immunity from RICO actions when they themselves engage in the racketeering activity.  ("An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments.") <u>Id.</u>

The Court concludes that the "operation or management test" is satisfied in the present matter.  Johnson is certainly a manager in CDA.  Johnson, who CDA categorizes as Senior Trial Counsel, was directly responsible for the formulation of Keiser's defense strategy, made travel arrangements for Keiser, received Keiser's motions, and corresponded with Keiser and Scott, all on behalf of CDA.  Keiser further alleges that Johnson and Dzhanszyan promised him a "vigorous defense" and told him "we don't plead out cases, we go to trial."  Assuming for the purposes of argument that Johnson and Dzhanszyan misrepresented their willingness to proceed to trial, and further assuming that such an action is fraud, they had a central role in soliciting and carrying out the fraudulent act.

### 2.  "Enterprise" Requirement

The second element in a valid RICO claim is that the alleged conduct was engaged in by an

enterprise. Sedima., 473 U.S. at 496. The parties do not dispute that CDA is an enterprise.

### 3. "Pattern" Requirement

The third element of a RICO claim is that a "pattern" of racketeering activity occurred. 18 U.S.C. § 1961(5); Wisdom, 167 F.3d at 407 (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237-38 (1989)). A "pattern" requires at least two acts of racketeering activity. Id. To be considered predicate acts, these prior instances must be related and must pose a threat of continued criminal activity. Wisdom, 167 F.3d at 406. For the two acts to be related, they must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. 18 U.S.C. 1961(1), defines the predicate acts that would support a RICO claim, and includes mail fraud and wire fraud under this aegis. When wire and mail fraud are plead as predicate acts, Plaintiff must show (1) a plan or scheme to defraud, (2) an intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme. Wisdom, 167 F.3d at 406 (citing Merr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 & n.6 (8th Cir. 1995)).

To establish the requisite pattern of fraudulent activity, Keiser has provided the affidavits of two individuals, Neulan Midkiff and Aaron Schwinn, who state that they were told that CDA did not plead out cases, but instead proceeded to trial in every instance. Keiser asserts that these demonstrate that "Johnson and Dzhanszyan regularly lie to prospective clients in order to charge them unconscionable fees." While these affidavits establish that CDA represented to affiants that they try cases rather than plead them out, the affidavits do not state that CDA in any way later

7

reneged on this representation. As such, the affidavits do not establish an intent or plan to defraud and the RICO action must fail.

### 4. "Racketeering Activity" Requirement

Plaintiff's RICO action also fails because he is unable to demonstrate that any set of facts would establish that CDA, Johnson and Dzhanszyan engaged in racketeering activity. Indeed, the uncontroverted facts of both Plaintiff and Defendants definitively establish that the fraud as alleged by Keiser did not occur. Plaintiff's claim that Johnson would not try his case rests upon Keiser's impression as to Johnson's intent. This impression was formed towards the end of their Los Angeles meeting, after Johnson set forth all of the evidence the government was likely to produce at trial. In Plaintiff's complaint however, Keiser admits that after the potential of plea bargain was discussed Brian Scott asked Johnson if he would rigorously defend the case if it proceeded to trial. Plaintiff concedes that Johnson said that he would rigorously defend Keiser and that he would fight this case the best he could. Again, this occurred after the retainer had been paid. Moreover, Keiser does not assert that the decision to proceed to trial or plead rested with anybody other than himself.

As Johnson unequivocally stated that he would provide Keiser a vigorous defense if Keiser decided to proceed to trial, this element could only be satisfied if Johnson was not truthful in his representation or if Johnson could not defend Keiser and was aware of such. As to the first possible scenario, this Court is mindful of its obligation to construe of the facts in favor of Plaintiff, but this does not mean that the Court must accept bald accusations as true. Wiles, 280 F.3d at 870. The Court is further unwilling to do so when the Plaintiff asserts that Johnson must be lying solely on the theory that Keiser "felt" Johnson was not willing to try the case. As to the second scenario,

Keiser relies solely on the fact that Johnson joined in the United States' Motion for a Continuance. Such continuances are commonplace, and do not indicate a per se unwillingness to proceed to an eventual trial. The Court, even upon a liberal reading of Keiser's complaint, is unable to discern any fact or set of facts that could provide a basis for Plaintiff's allegation that Johnson never intended to provide legal representation. Keiser's admission that Johnson was willing to fight his case to the best of his ability, a statement which occurred after, not before, Kesier paid his retainer, represents an insuperable bar to Keiser's action. There is, therefore, a proper basis for dismissal under Rule 12(b)(6). Frey, 44 F.3d at 671.

### B. Fraud in the Inducement and Execution Claims

In his complaint, Plaintiff additionally alleges claims of fraud in the inducement and fraud in the execution. Fraud is a question of fact, and is never presumed. Buehner v. Hoeven, 228 N.W.2d 893 (N.D. 1975); N.D.C.C. § 09-03-10. Plaintiff's sole contention as to this point, distilled from his complaint, is "charging $75,000 for $5,000 worth of services is fraud, even if the perpetrators are lawyers." Plaintiff's fraud claims fail for the same reason as his RICO action, namely that there are no set of facts that could be proven that Johnson engaged in fraud in his representation of Keiser. Johnson stated that he would vigorously defend Keiser, even after pointing out what he believed were shortcomings in the case. Plaintiff's mere allegation that Johnson was lying or otherwise dishonest does not constitute fact. The Plaintiff's complaint is long on conclusions but remarkably devoid of factual allegations that would actually sustain those conclusions. Dismissal as to this point is therefore similarly proper.

### C. Attorney Discipline Claim

Plaintiff also sets forth a claim for attorney discipline. There is no recognized cause of action for attorney discipline. It is therefore ripe for dismissal.

### II. 12(f) MOTION TO STRIKE

Defendants each alternatively move to strike Plaintiff's complaint under Rule 12(f) of the Federal Rules of Civil Procedure. This rule allows the court, on motion by a party, to order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter. Because this Court has already found dismissal of Plaintiff's claims under Rule 12(b)(6) to be appropriate, its decision does not rest on this alternative argument.[2]

### CONCLUSION

The Court hereby **GRANTS** Defendants' Motions to Dismiss in their entirety. The Motions to Strike are subsequently denied as **MOOT.**

---

[2] This is not to say the Motion to Strike is without merit. Plaintiff's complaint contains numerous impertinent statements about the various defendants and about the federal court system generally. CDA is referred to as "the law firm of Judas Iscariot and Associates, a.k.a. the Great Sanhedrin;" Johnson and Dzyhanszyan are described as "incompetent," and "unable to tell the difference between a good or bad indictment and a ham sandwich;"Johnson is specifically referred to as a "dump truck" lawyer, "cop out" lawyer, and as acting like "salesman who just had a buyer walk into a showroom with checkbook in hand;" and United States Attorney Wrigley is called "corrupt," a "co-conspirator" and "a willing participant in fraud." Further, Plaintiff's acquaintance Brian Scott enlightened Johnson to the fact that "judges don't read anything" and that a single Eighth Circuit Court of Appeals Judge "admitt[ed] to deciding 50 cases in two hours." Such *ad hominem* attacks have no place in Court proceedings - - particularly when they contain references that could be characterized as racist or anti-Semitic.

**IT IS SO ORDERED**.

Dated this 21st day of May, 2007.

                                          /s/  Ralph R. Erickson
                                  Ralph R. Erickson, District Judge
                                  United States District Court